It is 5-13-489, Gilder LLC versus Spiegeloo LLC. And beer. And what? And beer. And all. And beer. Thank you. Counsel, you may proceed.  Good morning, Your Honor. Still, I should say good afternoon. My name is Moriano Febasa, and I represent Anderson & Gilbert in the appeal before you. This matter involves Anderson & Gilbert's attorney's land for our representation of a man by the name of Charles Cashner, who had a lawsuit against the company that he owned a portion of, Spiegeloo LLC. It also involves the statute relating to the attachment act and, partially, the act involving arbitration. While there is a motion to dismiss pending before the court on the issue of jurisdiction, I'm prepared to argue our position on jurisdiction now, our defer on the rebuttal, if that's the court's pleasure. Which would you prefer? Rebuttal would be fine. Okay. Well, then let me get right to the substance of the thing. What we have are two orders, March 26, 2013, and then a subsequent order in September 19, 2013. There is also, of course, an intervening order in July, and I'll explain its importance in a moment. Before discussing those orders, I'd like to analogize, if I could, the attachment act. To an algebraic equation, break it down to a formula. You have A plus B plus C equals an order for attachment. Well, A in that formula stands for grounds. Well, in the March 26 order, the trial court found that Draper and Dugan had satisfied that element. They had grounds. B, appropriately, stands for bond. They had filed an attachment bond before the bond was set, before the hearing. And the court looked at that, and the court said, we find that bond insufficient in security to provide the security to the defendant. Now, there is the act itself, which gets to the element C, which I call cash, collateral. The statutes call it sufficient security, but it's all the same. What it's there for is to protect the defendant, to make certain that when their property is attached, that there is an ability for them to recover. In fact, that's why it's double the value. And so when the court looked at what Draper and Dugan brought on March 26, they said you had A, you got B, but you're missing the cash, you're missing the collateral. Now, I'm going to say that I'm going to grant your motion for an attachment, but there's a provision. That order for attachment shall issue, without further order, when you come up with the bond security that I've cited in the order. Well, that was March 26. As I said, there was an intervening order in July. Draper and Dugan come up and say, well, you know, Judge, we just can't make the two types of security that you've put in the March 26 order. Can we do something else? And the court permitted them to file an irrevocable letter of credit in the amount of $300,000. Well, there's a case we've cited. It's Avian versus Amarillo, I believe. That case, I'll give you just briefly the facts. It involved a bank that got really anxious. They believed that the defendant owed them $15 million to stem it from fraud. And they rushed to court and they filed a plethora of motions, including a motion for an order for attachment. And when you read the case, there is a citation as to the exchange between the court and the movement. And the court said, you know, I think you've got it. I'm going to grant your order for an attachment, but I don't see an attachment coming. And the attorney for the movement said, well, you know, Your Honor, we don't have one, but we'll be back with one before the end of the day. And so, true to their word, they came back at the end of the day. Wow, there's an attachment order. Except, except what? Well, we don't recognize in common law in Illinois a prejudgment attachment order. So when we have the statute, and it's in derivation of the common law, so the courts are required to strictly construe it, strictly apply it. And when that case came to the court like this, the court said, well, wait a minute. The statute is quite clear. It says prior to the own insurance of an order of an attachment, the court shall take a bond and sufficient security. And, you know, you were two hours too late. It doesn't matter that you came in two hours later with a bond. The act doesn't allow us to recognize an order issued before that bond and I'll read in and sufficient security is filed. Well, what's in this case? When, when did they find out that they had the security that they were allowed to file back from the July order? September 4th. I've done the math. I'm not real good with dates and calendars. But I believe that's five months and 14 days. If an afternoon is too long to wait for an hour for a bond with sufficient security to be filed, then surely five months and 14 days is too long. We filed on March 28th. Our attorneys knew. Now, I will tell you that there is no dispute that the attorney's lien was perfected on that day. Of course, while we have a statutory right to the attorney's lien on March 28th, we also, of course, have the equitable lien from the attorney's fee from a contingency fee contract, which also constitutes an equitable assignment. But when we went to court in August and said, Judge, here's our petition to enforce the attorney's lien against Speed Loot, LLC, those who presented the arguments that strongest was doing it in record. And they argued, well, you know, Your Honor, there is an attachment order. Well, under their theory, what the court has done in the March 26th order is the best that you can look at it is the court decided it was going to give a potential order of attachment, right? A plus B. And when C shows up, you get your order of attachment. Well, I don't know because there's no case law that tells us. Can a court have that discretion under the act? I don't know. That's uncertain. But I know what is certain. The act, 4-107, says you have to have bond and sufficient security in hand before there's an order of attachment to issue. So even if the court could do this potential order of attachment, the earliest date that the order of attachment could have been issued was when? September 4th. That's when the letter of credit showed up. In responding to our petition, the court looked at our arguments and decided that our priority had to be second because the court presumed that its March 26th order was intended to give them an order of attachment right there on the spot. Well, that's contrary to what the court wrote. In fact, if you look to the court's September 19th order, even if the court wanted to single G, maybe he was just trying to interpret it. If you look to the second page, the intent of the court's order was to recognize the legal right to the attachment, and then parenthetically, which by statute necessitates both proof of grounds in existence of a bond. Well, no disrespect meant for the trial court, but he forgot there's three other little words that ought to be in there, and sufficient security. There wasn't sufficient security up until September 4th, and the court, trying to paper over what was missing, said that it was its intent. It didn't mean to say that the bond wasn't good enough. What was the bond, by the way? It was Mr. Draper and Mr. Duden's promise to pay. That's what it was. That was all it was. Now, there's an old saying, my word is my bond, but that's not so under the Attachment Act. The court then said, well, to the extent that this September 19th order contradicts the language in this March 26th order, I'm going to amend it non pro tonque. Well, there's a case, and I believe it's Beck v. Stempf. This court might be familiar with it. It's a Fifth District case in which the Illinois Supreme Court on appeal said, you know, a non pro tonque order is meant for very limited purposes under the powers of that court. That is to correct a discriminatory error, a clerical mistake. It's not meant to reverse a judicial decision, to fill in the blank of a judicial omission, to correct a judicial error. It's not meant for that. To the extent that the September 19th order gives the basis for an order of attachment back to March 26th, non pro tonque, I say to the court, it ignores the language of the March 26th order. I have it. You have it before you as well. It's found on page three of four, and it's in paragraph three, and I'll read just briefly. It says the court finds that the appropriate amount of the bond required should be double the value of the judgment to be attached. That's fine. That's right with the statute. The court further finds, based upon a review of the record, affidavits, and pleadings before the court, the bond that's currently filed does not provide sufficient security. Prior to the issuance of an attachment, bond secured by commercial security or by unencumbered assets with a court-reviewed appraised value shall be posted in an amount not less than $300,000. He got it right. That's the statute. Now, I'll admit that on the last paragraph of paragraph three, it says the motion for attachment is therefore granted, but then it says, upon the posting of the required bond, an attachment order may enter without further hearing. That's the potential order of attachment. What is its date? What's its importance? It's been argued that we can solve this by the application of another portion of the attachment, 4-108. It's about amendments. Well, you know, it stands to reason, common sense, you can't amend something that doesn't exist. I know it doesn't exist. The statute says it doesn't exist, so how can you amend it? Now, I'll admit you can amend things. For example, the same statute, 4-107, requires that the bond and sufficient security be listed payable to the people of the state of Illinois. We have a number of things going on. Neither the bond nor the sufficient security is properly labeled to the people of the state of Illinois. Now, that's a mistake. That's an error that I think 108 would cover, maybe. But certainly it doesn't cover for the fact I showed up for court without my money. I come into court today in a trial court and I want to file an action, but I didn't bring a filing fee. Really? Did I just beat the statute of limitations by filing something in the clerk's office without a filing fee? I think not. You don't get an order of attachment unless there's a protection for the debtor. And their word wasn't their bond. Who says so? The trial court says so. And it is the statute that requires just that. There's the issue of the equity of it. Anderson and Gilbert represented Mr. Cashman in an arbitration proceeding because in the underlying action, Speedman said that case had to be arbitrated under the contract. And we went and we secured a judgment of $140,000 in change plus interest after the award. We followed the arbitration act. And within 90 days, we had that reduced or confirmed into a judgment. We have a contingency fee contract. It's 50%. Under common law in Illinois, that gives us an equitable assignment under the terms of the contingency fee contract that we have to 50% of that recovery. Now, if in fact they have an order of attachment, and I don't think they do, what can they attach? Can they attach that which doesn't belong to Mr. Cashner? And if they can, and if they can, then what message does this court send to plaintiff lawyers in this state who take contingency fee contracts? Does that mean that their work to provide a recovery for their client, a settlement, a judgment, is subject to be all taken by the plaintiff's third-party creditors? If you believe their position, Anderson and Gilbert's actions, work to secure the money, which they now want to have, is uncompensated. That's inequitable. It violates the equitable principles of an equitable lien and the equitable assignment of the judgment. Truly, this case involves competing interests. And in this instance, the court, with our petition for the enforcement of our attorney's lien, made a decision that our attorney's lien placed second fiddle to an attachment order that had no money behind it at the time that we filed our attorney's lien. And in fact, it continued to be an un-executed attachment order until September 4th. I can point to the court a number of cases that talk about the fact that an attorney can seek to recover their attorney's fees independently. Well, I can also point to the statute. The statute says that a petition can be filed by either the attorney or the client and the attorney. There is a case that we cited in the brief with Carter in which the attorney prevailed in recovering his fee from the recovery of an automobile accident. There's an argument that we don't have a right to collect our fee independently. Well, that is an important issue again, not just for lawyers, but let's stop and forget about us. Let's talk about the public for a moment. Most people who need to find an attorney under a contingency fee contract don't have a wallet that's going to be able to support paying someone an hourly rate. And when you put a chill into the legal profession that contingency fee contracts aren't what they used to be, then what does that do to the public who relies on contingency fee contracts to get good and legal representation for their claims? I'm not trying to drape Anderson and Gilbert as some knight on a white horse and therefore because it's good for our public policy, we ought to get paid. But what I'm trying to point out to the court that there's more involved here than just Anderson and Gilbert's attorney's fees. What's involved here is issues of equity, and more importantly, there is the pesky little thing called the Attachment Act. And I know there will be arguments made that there's no difference between bond and sufficient security. Well, I don't think the legislature writes statutes and uses words that are superfluous. Well, if bond was all that they meant, why or why did the legislature say insufficient security? Well, because they wanted to make sure that there was money collateral behind that promise. And on March 26th, there was none. I didn't say so. The judge said so. In fact, even in the March, even in the September 19th notice, he doesn't back off of that. He agrees with the fact that on March 26th, they didn't have sufficient security. He's not saying that that isn't so. He's just saying that it doesn't matter. Well, he's wrong. The trial court made a mistake. I understand the desire to protect Dugan and Draper in their interest. But the court's job is to apply the law as it's written because this statute is in derogation of the common law. And this court has to apply it strictly. And I'll leave it with this last moment. You know, you get to decide this case de novo. This whole matter before you is all questions of law. And I ask the court to consider the arguments that we've made. And I'll take up the issue of jurisdiction on rebuttal. I appreciate the court's time and I'll cut it early. Thank you. Appellee. Good afternoon, Your Honors. May it please the court. Mr. Fevassa, David Angioli representing the appellees. To prevail in this case, the law firm representing the plaintiff has to overcome three hurdles that are insurmountable. The first and foremost of these is the appellate court's jurisdiction. We're dealing with an appeal from an order that does not resolve all issues pending in the trial court. Nonetheless, the appellate law firm has failed to comply with Supreme Court Rule 304A, which requires a specific finding that there is no just reason for delay or enforcement of the appeal. Even if the law firm could get over the first hurdle, the jurisdictional hurdle, then we have a second insurmountable burden. The claim that the attachment order was somehow invalid or unperfected when entered presupposes that there was no bond filed when the order issued. But in fact, the record reflects in spades that there was a bond on file at the time of issuance of the attachment order. And even if the law firm could get over the first two hurdles, they have yet a final hurdle, and that is that they seek a remedy which is not permitted under the attorney's lien statute. The law firm is seeking to obtain a money judgment against a third party that's totally divorced from their client's underlying claim. They have failed to identify any proceeds to which their alleged attorney's lien could attach. For those reasons, the appeal must be dismissed. Let's turn to the jurisdictional issue for just a moment. That involves an analysis of Supreme Court Rule 304A, or 304, I should say. And essentially, Rule 304 says that if you have a judgment that does not dispose of all matters pending in the trial court when entered, then you have to obtain a finding from the trial court that there is no just reason to delay enforcement or appeal. And of course, the reason for this rule is to avoid piecemeal appeals. Now, in this particular case, there's not one, there's not two, there are four remaining matters pending in the trial court at this time. The first is the plaintiff's claim against my clients. The second is Dugan's counterclaim against the plaintiff. The third is Draper's counterclaim against the defendant. And the fourth is Speedlew's counterclaim against plaintiff. All those claims and causes of action remain pending in the trial court at the time of the order appealed from. Nonetheless, there is no finding in that order which would permit a piecemeal appeal of the denial of the petition to enforce the attorneyship. Now, in its response to the motion to dismiss, the law firm relies on subparagraph B of Rule 304, which says that in certain circumstances, there can be an appeal without disposing of everything in the trial court and without the finding required by Rule 304A. But we look at those instances, Your Honors, and this case clearly does not fall within any of the exceptions under Rule 304B. And essentially, those exceptions relate to proceedings, orders entered into proceedings relating to administration of estates, guardianships, and receiverships, and liquidations. In other words, in those cases where you're dealing with some ongoing administrative issue, like a deceitful estate or some other probate matter, or a liquidation where there could be years and years of administration, then you can take an appeal from a discreet final order without compliance with Supreme Court Rule 304A. But that's not the situation here. This is not a mistake proceeding. This is not a liquidation proceeding. This is not a receivership. Therefore, the requirement of a finding under Rule 304A is an essential condition precedent for this appeal. Since it was not complied with, the appeal should be dismissed. Apart from the jurisdictional issue, I'd like to address now the question of whether or not this attachment order was, in fact, valid. The principal case on which the law firm relies, the ABM Ambrose case, needs to be distinguished from the case at bar. In the ABM Ambrose case, the attachment order was entered when there was no bond on file. And the statute provides explicitly that an attachment order entered without bond is void. So the appellate court in the ABM Ambrose case had no option but to void the attachment order, even though the bond was filed shortly after the attachment order was entered. The statute says you can't have the order without the bond. In this case, the appellees did, in fact, have their bond on file when the attachment order was initially entered. There's no dispute about that. It's right in the record. The bond is signed by both of them. The bond is in the form prescribed by the Attachment Act. The ABM Ambrose case does not deal with a situation like the case at bar, where there is a bond on file. Now, counsel is correct when he says that the trial court found that some additional security should be filed to support the attachment. And relying on Section 4108 of the Attachment Act, the court said, I'm granting you leave to provide additional security to support this attachment bond. The statute provides that the court may, quote, either before or after actual attachment require additional security. That's exactly what the court did in this case. And note the alternative language in the statute. Either before or after the actual attachment, the court can require additional security. Now, if the attachment order were void because the court thought more security was necessary, then how could the statute say that the additional security may be required before or after the attachment order? Counsel for the law firm overlooks that provision of the statute, a provision that controls in the case at bar. And there is no dispute that my clients comply with the court's order relating to additional security. True, the original attachment order is not perfectly clear in terms of when the effective date of the order is. At one point, the order says it is effective immediately. The motion for attachment is granted. At another point, there's some vagueness. To the extent that there is any ambiguity or uncertainty in that order, however, as to the effective date of the attachment, Judge Knight clarified it in his non-proton order. And he made it clear that the effective date of that attachment order is March 26, 2013. Now, counsel for the plaintiff's lawyers say, well, you can't do that non-proton. It wasn't clear. But that's the whole purpose of a non-proton order is to clarify an ambiguity or uncertainty in the record. The only thing that's necessary to exercise the non-proton authority is to have some evidence, contemporaneous evidence in the record of what the court's actual intent was. And in this case, there's plenty of evidence. Number one, he puts it in his order on granting the motion for attachment. The prayer for relief in the motion for attachment says this stuff is hereby attached. Two, the second evidence of the intent comes right from the plaintiff's lawyers. Immediately after that attachment order was entered, they file a motion to dissolve it. And they say in their motion, no less than five times, we're seeking to set aside the, quote, attachment order. Why? Because in view of that attachment order, we cannot enforce our judgment. There's no ambiguity in this order as to what the court's intent was. But to the extent there was any, it was removed by the non-proton order, a non-proton order that reflects an intention consistent with the plaintiff's own reading of that order. As a result, we have an attachment that is prior in time to the attorney's lien. First in time, first in right. That's the rule of law that the trial court applied. That's the rule of law that everyone in this case agrees applies. And under that rule, the attachment order takes priority. But I want to turn to the third point here, too. Because even if the court were to agree with counsel's interpretation of the attachment order, they still have to climb over a third hurdle. There are alternative grounds for denying this petition to enforce the attorney's plea. The alternative ground is that the Lien Act does not provide for the remedy that they've asked for. The law firm asked for a money judgment equal to the amount of its lien against a third party. There's nothing in the Lien Act that would allow that relief. What the Lien Act authorizes is the court to adjudicate the attorney's lien. That involves, A, determining whether that lien exists, B, whether the lien was properly perfected, and C, the amount of the lien. It doesn't enable the court to go any further and enforce the lien by judgment independent of the plaintiff's claim. The Lien Act says you have a lien on identifiable proceeds of your client's recovery. You don't have some new cause of action against the same party your client has a cause of action against. That's the fundamental flaw in the law firm's theory. When and if the plaintiff were to enforce his judgment, then the law firm, by virtue of its lien rights, could attach some identifiable portion of that recovery. Or if the judgment debtor, in this case Speed Liu, wanted to pay off the judgment and obtain a satisfaction, then they would have to distribute some of that money to the lawyers to satisfy their lien claim. But the Act does not allow, and none of the cases cited by the law firm would permit, an independent cause of action on the part of the attorneys. In fact, the way the courts have expressed this is that once you have a judgment entered and a properly perfected attorney's lien, the lawyer and the client become joint holders of the judgment. In other words, they have to act jointly to enforce the judgment, and the judgment debtor cannot ignore the attorney's share of that joint judgment. That's all it means. Now, counsel for a law firm eloquently states that we have an equitable situation here, and we have to protect attorneys' fees. Your Honors, attorneys have a right and a means to protect their fees. They can rely on the Attorney's Lien Act, just as my clients relied on the Attachment Act. The Attorney's Lien Act says you have to cross some Ts and dot some Is before you can enforce that lien. The Attorney's Lien Act says the number one thing you have to do is send out a notice of your lien. That's why in the ordinary course of business, as a tort lawyer or any other type of contingency fee lawyer, what's the first thing you do when you get the case? You send out that lien letter. That was not done in this case. In fact, the law firm waited over a year and a half before they sent out that lien letter. The law firm waited 45 days after my clients filed their petition for attachment to send out that required letter. The law firm, in fact, waited three days after the attachment order was entered to send out that lien letter. So if there is any issue as to whether or not this law firm's fees should be protected, it's an issue that they created by their own lack of diligence. Equity does not support one who sits on his rights. The law is clear that lawyers have a means to protect their fees. The fact of the matter is that this law firm did not avail itself of the statutory procedure to protect its fee. For those reasons, Your Honor, jurisdiction, valid attachment, improper remedies sought by the law firm, we ask that the court either A, dismiss the appeal for lack of jurisdiction, or B, affirm the trial court. Thank you so much. Thank you. Your Honor. Thank you, Your Honor. As promised, let me talk about jurisdiction. The 304 argument is basically a box within a box. This is what I mean. They say the March 26th and the September 19th arters don't comply with 304. Well, on the issue of finality, let's talk about that for a moment. There's a case, Olcott v. Stella. You have that in the brief. That case sets out what Illinois law is now. When it comes to arters of attachment, finality is assumed. So that we've met that prong of 304. He's right. We do rely on 304 being 2. And I want to read it to you. It's in the memo in opposition. But it says, subparagraph 2 is comparable in scope to subparagraph 1, but accepts arters that are repeatable as interlocutory arters under Rule 307. Examples of arters covered by subparagraph 2 are an arter allowing or disallowing a claim and an arter for the payment of fees. That's what it says. It doesn't say anything more than that. It doesn't say anything less than that. What's the basis of Anderson v. Gilbert's claim? It's a fee. I think there is enough room in 304b-2 to have this court take jurisdiction of the matter. That should answer the issue of jurisdiction as it is raised, particularly to the March 26th and September 19th arter. But he has backdoored the small amounts. Now, under, I think, his point number 3, there's no specific fund. I assume what he's saying is the March 22nd arter doesn't comply with 304. Well, I happen to bring along with me an excerpt from that, and I will refer the court to it. It reads, the March 22nd judgment is final and contains the 304 finding. Here's the quote. Judgment and execution may issue immediately, forthwith, and without delay. This is a final judgment on the issues of count one of the petition, which is severed for the purposes of finality. There is a case we cited in our brief. It's Foster v. Foster. And it says, parenthetically we've quoted, determining that the language execution may issue on or after September 23rd, 1994, was sufficient to confer jurisdiction under 304a. Well, I read that to say, well, execution may issue immediately. That seems pretty much the same. The court says it's final judgment. Why is it final judgment? Well, because his clients, who are also members of Speed Rule, wanted the court to sever count one. You have an arbitration clause, Mr. Cashner. Go to arbitration. That's where it goes. And so we did. And so a judgment was entered by way of the arbitration award we acquired for them. He talks about the fact that we can't have this independent action to enforce our attorney's leave. McCardell, there's a case before you, involves an attorney without his client, goes after the Torch Feesers Insurance Company, and they made the same argument. You can't come to a third party and expect to get paid cash. The court said, oh, yes, you can. He can enforce his attorney's leave. And then ignore it, by the way. I mean, he talks about first in time. First in time. Well, what's first in time? There's a case, and I didn't cite it in the brief. But I'll hand Mr. Anthony a copy. I'll give you a copy of the court report. Now, what we'll do on this is, Mr. Agnew, you'll have a default motion to file additional. I will do that. And with that, he will have 10 days in to answer that so that we've got both sides. And that's great, Your Honor. And if I can take my moment now just to talk about the equitable lien and the equitable assignment. Common law in Illinois still exists on the issue of attorney's liens. Okay? It didn't go away with the statutory attorney's lien. And why is that important? Well, in the case that I'm going to provide to the court, the attorney, Mr. Burke, was fired. Okay? And he was trying to assert his attorney's lien. And then, so he argues, alternatively, an equitable lien, which is not dependent upon timely service of the notice of the lien. And the court goes on to say that under certain circumstances, a contingency fee contract constitutes an equitable assignment. Well, let's say that Draper and Dugan are right, first in time. And out of time. File your – he will have 10 days. I will, Your Honor. And I appreciate your time and putting up with us today. Thank you. Court will be in recess for approximately one hour. All rise.